168

## CIRCUIT COURT OF LOUDOUN COUNTY

Wilfred Nolan

v.

Amy L. Tankoos
and Robert Remuzzi

May 23, 1989

Case No. (Law) 9599

By JUDGE THOMAS D. HORNE

This is an action for medical malpractice arising out of the care rendered to Wilfred Nolan in the months of January and February, 1984. Mr. Nolan at that time was fifty-one years of age. He attended school through the eleventh grade and holds an honorable discharge from the United States Air Force. Throughout his adult life, Mr. Nolan has been employed as a plumber, a profession for which he holds a Class A master's license in the Commonwealth of Virginia.

Prior to January of 1984, Mr. Nolan described his health as "good," although he had been given a disability rating in 1980 of twenty percent permanent partial impairment of one upper extremity and twelve percent of the whole man. Despite this earlier disability rating, he was able to work at his trade which included the performance of "tough" and "heavy" work. Mr. Nolan described the events

immediately preceding his hospitalization and treatment in January, 1984. During his initial stay at Loudoun Memorial Hospital, Mr. Nolan came under the care of Amy L. Tankoos, M.D., a Board certified neurologist. A subsequent referral was made by Dr. Tankoos to Robert Remuzzi, M.D., a Board certified orthopedic surgeon. The jury in this case found that Dr. Tankoos and Dr. Remuzzi were negligent in the care they rendered Mr. Nolan and that their negligence was a proximate cause of his ensuing neurological injuries. Damages were fixed by the jury in the amount of $1,500,000.00. Defendants have filed post trial motions in which they request, *inter alia*, that the Court strike the evidence of the Plaintiff and enter summary judgment in their favor. In the event the Court were to reject their respective motions for summary judgment, they ask that the jury verdict be set aside and a new trial granted on all issues, or failing this, a new trial be granted on the issue of damages alone. Lastly, the Defendants request that the Court order remittitur.

In considering the motions filed by the Defendants, the Court is guided by the principle that the verdict of the jury must stand unless plainly wrong or without credible evidence to support it. Section 8.01-430, Code of Virginia, 1950, as amended: *Coleman v. Blankenship Oil Corp.*, 221 Va. 124 (1980). The trial judge should not substitute his conclusion for that of the jury merely because he may have voted differently had he been on the jury. *Commonwealth v. McNeely*, 204 Va. 218 (1963).

The jury was properly instructed on the issues of the Plaintiff's burden of proof, negligence, proximate cause, and damages.

In a malpractice case, it is necessary that the opinion of experts be obtained as to whether there has been a breach of the applicable standard of care and whether there exists a causal relationship between the breach and the injury (except where such causal relationship is one within common knowledge). *Fitzgerald v. Manning*, 679 F.2d 341 (4th Cir. 1982). Plaintiff has called several expert witnesses who have testified concerning various breaches of the standard of care sufficient to withstand an attack on the jury verdict. Hence, the question to be asked is, "Has the Plaintiff put forth satisfactory evidence to establish a factual relationship between neg-

ligence and injury sufficient to have made a jury issue of causation?" This Court must answer the question in the affirmative.

The test of proximate cause in Virginia is governed by the "but for" test in which proximate cause is defined as follows:

> The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred. *Coleman v. Blankenship Oil Corp.*, 221 Va. 124, 131 (1980), (*citing Beale v. Jones*, 210 Va. 519, 522 (1970)).

Stated another way:

> The defendant's conduct is not a cause of the event, if the event would have occurred without it. Prosser, *Handbook of the Law of Torts*, section 41 (4th Ed. 1971).

In a medical malpractice case, where two or more causes may concur to bring about an event, it is necessary to show through expert opinion evidence that it is more likely than not that the offending physicians' action or inaction caused the injury. *Fitzgerald v. Manning, supra.* The Court agrees with Mr. Blazer that the "loss of a chance" rule is not applicable to this case as the alleged malpractice did not result in the death of the patient. *Cf. Brown v. Koulizakis*, 229 Va. 524 (1985).

The Court finds that the Plaintiff has presented sufficient evidence through the testimony of experts to make the issue of causation one for the jury. Without considering each instance of alleged malpractice, the Court need only address the testimony relating to the actions of the Defendants on February 15, 1984. There exists credible, though admittedly controverted, evidence surrounding the events of that date. The Court does not find the testimony of Plaintiff's witnesses to be incredible or otherwise unworthy of consideration by the jury. There is expert testimony in the record that establishes with

a reasonable degree of medical certainty that but for the actions of each of the Defendant physicians on that date, the cord compression could have been discovered (and treated) before acute deterioration. The testimony offered by Plaintiff concerning the events of that date, when taken in conjunction with the other evidence in the case, is sufficient to make the issue of causation one for the jury. A fair review of the evidence leads the Court to find that the jury was not left to speculate upon a verdict in this case.

Clearly, the jury might reasonably conclude from the evidence that Mr. Nolan has suffered serious neurological problems as a result of the spinal cord compression. His condition was described generally as one of "a 50 year old man getting stuck in an 80 year old body." In addition to testimony relating to follow-up care for the rest of his life, there is evidence that he will no longer be able to perform the physical tasks to which he had become accustomed during his career as a plumber. He is now left to ply his trade supervising or helping to instruct others.

The jury verdict awarded damages in the amount of $1,500,000.00. This Court should not set aside the damage award of the jury unless it appears from the record that the jury has been influenced by partiality or prejudice, or that the jury had been misled by some mistaken view of the merits of the case. *E. I. DuPont de Nemours & Co. v. Taylor*, 124 Va. 750 (1919). Upon a careful consideration of the evidence, the Court is left with the inescapable conclusion that the award of damages is so out of proportion to the injuries suffered as to require setting aside. It suggests, *inter alia*, that the award of damages was the result of a misunderstanding by the jury in their application of the evidence to the instructions on damages. *Rutherford v. Zearfoss*, 221 Va. 685, 689 (1980).

Mr. Nolan was 51 years of age at the time he was injured. He has a life expectancy of 20.2 years. Loss of earnings and of future earning capacity *were not* issues for the jury to consider in awarding damages in this case. Plaintiff's economic damages were approximately $90,000.00. While there is evidence of serious neurological deficits, the follow-up medical care needed was estimated at four times a year. Although Mr. Nolan was described as a "50

year old man in an 80 year old body," his condition was described as basically "stabilized." It was stated that Mr. Nolan's situation would not radically change "from what you already see in terms of the next fifteen years or so." Furthermore, Mr. Nolan had a prior disability rating at the time he suffered the injuries complained of in this case. Despite continuing problems related to his neurological injury, he has been able to work, albeit in a teaching or supervisory capacity.

The Court is of the opinion that the error committed by the jury does not, however, affect the verdict on the issue of liability. There is no indication that the jury verdict was the product of sympathy, partiality, or prejudice. In evaluating the issue of damages, the Court has carefully considered those factors outlined above relating to the age and future disability of the Plaintiff; the "economic" damages sustained by the Plaintiff, and their relationship to the non-economic damage; and the effect of the disability on Mr. Nolan's health. While the Court instructed the jury to confine their consideration to the evidence of damages found in the record, the questions which were sent to the Court demonstrate a misunderstanding on the part of the jury as to the parameters governing their consideration of the evidence of damages. This misunderstanding of the evidence and of the instruction concerning damages is reflected in the *grossly disproportionate* damage award.

However, as stated earlier, the Court does not find that the verdict should be set aside as to the issue of liability. *Cf. Rutherford v. Zearfoss*, 221 Va. 685 (1980). The Court is of the opinion that this is a proper case to set aside the damage award and require Plaintiff to remit a part of his recovery, as ascertained by the verdict of the jury, or submit to a new trial on the issue of damages. Sections 8.01-383, 8.01-383.1, Code of Virginia, 1950, as amended; *Bassett Furniture v. McReynolds*, 216 Va. 897 (1986). Accordingly, the Court will require Plaintiff to remit the sum of $810,000.00 from the jury verdict and will order that damages be fixed at $690,000.00. The Court will grant to the Plaintiff forty-five days within which to make an election to accept the award of damages of $690,000.00 under protest or otherwise or to submit to a new trial on the issue of damages. This damage award,

while a reduction in the previous award, reflects the serious "non-economic" damages which were testified to and which were suffered subsequent to the onset of the quadraparesis.

As the Court has ordered the verdict of the jury reduced below the malpractice cap provided for in Section 8.01-581.15, Code of Virginia, 1950, as amended, the challenge to the validity of that limitation on recovery in this case is rendered moot. In any event, the Court finds the holding of *Etheridge v. Medical Center Hospitals*, 237 Va. 87 (1989), would be dispositive of the issue.

Mrs. Walsh may draw an Order consistent with this opinion, denying the motions of the Defendants except as to remittitur, to which counsel may note their exceptions. In the event Plaintiff elects to accept the reduced award of $690,000.00 under protest or otherwise, the Order may provide for Final Judgment in that amount. In the event Plaintiff desires a new trial on damages, the Order should continue the matter in order that a new trial date may be set.